UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────x

UNITED STATES OF AMERICA, ex rel.
ANN CATHERINE FINNEY, Relator,

BRINGING THIS ACTION ON BEHALF
OF THE UNITED STATES OF AMERICA,

        Plaintiffs,

  - against -            05 Civ. 3317 (CM)

NEXTWAVE TELECOM, INC., NEXTWAVE
PERSONAL COMMUNICATIONS, INC.,
NEXTWAVE PARTNERS, INC., NEXTWAVE
WIRELESS, INC., NEXTWAVE POWER
PARTNERS, INC., WEIL, GOTSHAL & MANGES,
LLP, LUCAS, MCGOWAN, NACE & GUTIERREZ,
CHARTERED, LUCAS, NACE, GUTIERREZ &
SACHS, CHARTERED, and THOMAS GUTIERREZ,

        Defendants.

─────────────────────────────────────────x

**ORDER AND DECISION GRANTING DEFENDANTS' MOTION TO DISMISS**

McMahon, J.:

  In the wake of nearly seven years of contentious bankruptcy litigation, Relator Ann Catherine Finney brings this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 2729-2731, in the name of the United States,[1] against defendants NextWave Telecom, Inc., NextWave Personal Communications, Inc., NextWave Partners, Inc., NextWave Wireless, Inc.,

---

[1] Under the False Claims Act, a private individual may bring a civil action for violation of § 3729 on behalf of him/herself and the Government of the United States. 31 U.S.C. § 3730(b). Such an action is referred to as a *qui tam*, which literally means, "who sues on behalf of the king as well as for himself."

NextWave Power Partners, Inc. (collectively, "NextWave");[2] Weil, Gotshal & Manges LLP ("Weil Gotshal"); Lukas, Nace, Gutierrez & Sachs, Chartered (sued as Lucas, Nace Gutierrez & Sachs, Chartered, and as Lucas, McGowan, Nace & Gutierrez, Chartered) ("the Lukas Firm"); and Thomas Gutierrez.

Relator alleges that defendants committed fraud on the United States by their knowing failure to inform the federal government of the existence of the Federal Credit Reform Act ("CRA"), 2 U.S.C. § 661a-f, which precludes modification of a federal loan in the absence of advance Congressional approval, and of the CRA's alleged applicability to the Federal Communication Commission's ("FCC") auction of electromagnetic spectrum licenses and NextWave's related bankruptcy proceedings. Relator seeks to recover damages and penalties for seven counts of fraud under the FCA, including: (1) Weil Gotshal's alleged false claim for payment of legal services and/or use of false records and statements to obtain approval of a false claim in violation of 31 U.S.C. §§ 3729(a)(1) and (a)(2); (2) defendants' alleged use of false statements to obtain a discharge in bankruptcy of NextWave's spectrum auction debt in violation of 31 U.S.C. § 3729(a)(7); (3) alleged conspiracy to use false statements to obtain bankruptcy relief in violation of 31 U.S.C. § 3729(a)(3); (4) alleged conspiracy to use false statements to cover up Weil Gotshal's false claim for payment of legal services in violation of 31 U.S.C. § 3729(a)(3); (5) defendants' presentation of NextWave's global settlement as an alleged false

---

[2]On April 13, 2005, NextWave Telecom, Inc., NextWave Personal Communications, Inc., NextWave Partners, Inc. and NextWave Power Partners, Inc. were acquired by VZW Corp., an indirect, wholly owned subsidiary of Cellco Partnership d/b/a/ Verizon Wireless. Their names have been changed to Verizon Wireless Telecom Inc., Verizon Wireless Area Communications Inc., Verizon Wireless Partners Inc., and Verizon Wireless Power Partners Inc., respectively.

claim for payment without prior Congressional approval and/or use of false statements to obtain approval of NextWave's global settlement in violation of 31 U.S.C. §§ 3729(a)(1) and (a)(2) and § 3730(c); (6) alleged conspiracy to present NextWave's global settlement as a false claim for payment without prior Congressional approval and/or to use false statements to obtain approval of NextWave's global settlement in violation of 31 U.S.C. § 3729(a)(3); and (7) defendants' alleged false claim for, use of false statements to obtain approval for, and conspiracy to present a false claim for legal services fees provided to NextWave in violation of 31 U.S.C. §§ 3729(a)(1), (a)(2), and (a)(3).

Defendants move to dismiss the Complaint pursuant to Rules 12(b)(6) and 12(b)(1), asserting that Relator fails to state a claim under the FCA, Relator's claims are foreclosed by the FCA's jurisdictional bars, Relator's interpretation of the CRA is flawed, Relator's Complaint is an impermissible collateral attack on prior proceedings, Relator's claims against Weil Gotshal are time-barred, and Relator's claims against certain NextWave entities are prohibited by the terms of NextWave's reorganization plan. For the reasons discussed below, the court grants defendants' motion to dismiss.

**Facts**

The relevant facts, as alleged in the Complaint, are as follows:

In 1996 and 1997, pursuant to the Telecommunications Act of 1996 and amendments to the Communications Act of 1934, the FCC conducted a series of auctions to allocate electromagnetic spectrum licenses. Complaint ("Compl.") ¶ 33. Seeking to encourage the involvement of small businesses, the FCC limited participation in two of the six auction blocks– the "C Block" and "F Block" auctions– to entrepreneurs and small businesses and offered

3

installment payment plans to those buyers. 47 C.F.R. § 24.709(a)(1); FCC v. NextWave Personal Commc'ns, Inc., 537 U.S. 293, 296 (2003). NextWave was awarded 63 C Block licenses on winning bids totaling approximately $4.74 billion, and 27 F Block licenses on winning bids of approximately $123 million. NextWave, 537 U.S. at 296.

On August 16, 1996, the FCC retained Weil Gotshal to assist the Commission in maximizing its position as a creditor of winning auction bidders, and to advise the FCC on revisions to its installment payment procedures and requirements. Compl. ¶¶ 33, 99. Weil Gotshal's contract with the FCC terminated on or about June 13, 1997. Compl. ¶¶ 38,99.

In the Spring of 1997, several successful bidders, including NextWave, were unable to obtain financing for their operations and petitioned the FCC to restructure their installment-payment obligations. Compl. ¶ 39.

In June 1997, after several licensees had filed for bankruptcy, the FCC sought public comment on alternatives to foreclosing on and re-auctioning the licenses. Compl. ¶ 39. The Congressional Budget Office ("CBO") issued two studies, "Where Do We Go From Here" and "Spectrum Auction Debt," advising Congress about the costs of the auction winners' defaults. Compl. ¶ 39. Nextwave also submitted written statements to the FCC. Both the CBO's and NextWave's reports suggested that the CRA applied to the auction winners' installment plan payments. Compl. ¶¶ 39, 40.

NextWave ultimately filed for bankruptcy in the Southern District of New York on June 8, 1998. Compl. ¶ 44. Weil Gotshal entered an appearance as counsel for NextWave, and was ordered by the bankruptcy court to confine its representation to matters unrelated to Weil Gotshal's former representation of the FCC. Compl. ¶ 45. NextWave retained the Lucas Firm to

4

handle special regulatory matters, as well as two other firms to act as counsel on FCC-related matters. Compl. ¶ 46.

In January 2000, the FCC announced that, because NextWave had ceased installment payments while in bankruptcy, its licenses were "cancelled" and would be re-auctioned. Compl. ¶ 63; NextWave, 537 U.S. at 298. NextWave challenged the cancellation and re-auction, first in the bankruptcy court, then before the FCC itself. The bankruptcy court declared null and void the FCC's cancellation of NextWave's licenses under various provisions of the Bankruptcy Code. NextWave, 537 U.S. at 299. The Second Circuit reversed the decision of the bankruptcy court, and returned NextWave's spectrum licenses to the FCC. Compl. ¶ 63. NextWave filed a petition with the FCC seeking reconsideration of the license cancellation. NextWave, 537 U.S. at 299. Upon the FCC's denial, NextWave appealed to the Court of Appeals for the District of Columbia Circuit, asserting that cancellation of its licenses was arbitrary and capricious, and contrary to the law. The D.C. Circuit agreed with NextWave, holding that 11 U.S.C. § 525 barred the FCC from revoking the licenses based on NextWave's failure to make installment payments while in bankruptcy. Compl. ¶ 63; NextWave, 537 U.S. at 299. The Supreme Court affirmed the Court of Appeals' decision on January 27, 2003, and the licenses were restored to NextWave. Compl. ¶ 69.

In late December 2002 or early January 2003, Relator advised FCC attorneys that certain appropriations laws, including the CRA, might pre-empt the bankruptcy laws applicable to NextWave's spectrum auction debt. Compl. ¶ 38.

In April 2004, NextWave and the FCC agreed to a global settlement of NextWave's auction debt. Compl. ¶¶ 19,71. Under the agreement, NextWave satisfied all of its debt

obligations to the FCC by returning 90% of its licenses and making substantial additional cash payments. NextWave was permitted to keep the remaining licenses free and clear of any debt or claims or liens of the FCC. Compl. ¶ 71. The United States also released NextWave and its advisors and attorneys "from any and all claims . . . that are based in whole or in part on any act, commission, omission, transaction or other occurrence or circumstance existing or occurring prior to" May 25, 2004, when the bankruptcy court approved the settlement, with a narrow exception for claims relating to fraud. Compl. ¶ 72. The settlement resulted in a total recovery of more than $4 billion for the government. Compl. ¶¶ 20,71.

The bankruptcy court approved NextWave's Chapter 11 reorganization plan on March 1, 2005.

On March 29, 2005, Relator filed the present *qui tam* action, alleging that defendants violated the FCA by failing to advise the federal government of the possible application of the CRA to spectrum auction debt and NextWave's related bankruptcy proceedings. Compl. ¶ 3. On July 26, 2005, the United States notified the Court of its decision not to intervene in this action. On October 17, 2005, defendants moved to dismiss the Complaint.

**Standard of Review**

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir.1999). The test is not whether the plaintiff ultimately is likely to prevail, but whether he is entitled to offer evidence to support his claims. Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998). The court assumes that all factual allegations in the complaint are

true, and draws all reasonable inferences in the plaintiff's favor. EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir.2000). "In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner, Inc. 937 F.2d 767, 773 (2d Cir. 1991).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Fed.R.Civ.P. 12(b)(1). The burden rests on the party invoking the court's authority to establish by a preponderance of the evidence that the court possesses subject matter jurisdiction over the action. See Shenandoah v. Halbritter, 366 F.3d 89, 91 (2d Cir. 2004) (citations omitted); Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002). In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider material outside the complaint. See Makarova, 201 F.3d at 113.

## Discussion

Pursuant to the False Claims Act,

Any person who
(1) knowingly presents or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;
(2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . or
(7) knowingly makes, uses or causes to be made or used, a false record or statement to avoid or decrease an obligation to pay or transmit money or property to the Government,
is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 plus 3 times the amount of damages which the Government sustains because of the act of that person. . .

7

31 U.S.C. 3729(a).

Relator asserts seven FCA claims against defendants, each of which stems, directly or indirectly, from defendants' alleged knowing failure to inform the courts, the FCC, and Congress of the existence of the CRA and its alleged applicability to spectrum auction debts and, in particular, to NextWave's rights in bankruptcy. The core of Relator's argument appears to be that, under 2 U.S.C. § 661c(e), any disposition of a federal loan that decreases the government's recovery constitutes a "modification," and thus is barred in the absence of advance Congressional approval. Since no Congressional approval was sought or obtained by NextWave, Relator contends that NextWave was barred from satisfying its debt obligations to the FCC in the manner provided under the global settlement.

The court finds that Relator's first cause of action against Weil Gotshal is untimely under the FCA's six-year statute of limitations, and that her remaining causes of action both fail to state a claim under the FCA and are barred by the doctrine of res judicata. Therefore, the court need not reach the issue of whether the CRA actually superceded NextWave's bankruptcy rights in the absence of Congressional approval.

A.  Plaintiff's First Cause of Action is Time-Barred

In her first cause of action, plaintiff alleges that defendant Weil Gotshal violated §§ 3729(a)(1) and (a)(2) of the False Claims Act by submitting a false claim for payment of legal services under its contract with the FCC and/or by using false statements and records to obtain approval for a false claim for payment of legal services under its contract with the FCC. Specifically, plaintiff claims that, though Weil Gotshal was required under its contract with the FCC to make recommendations to maximize the FCC's position as a creditor of spectrum

auction winners, Weil Gotshal failed to identify the existence of or to analyze the implications of the CRA. Because Weil Gotshal's work product was defective, plaintiff contends, any claim for payment constituted a false claim. Additionally, Relator alleges that Weil Gotshal presented to the FCC false certifications under the Federal Acquisition Regulations, by failing to identify a potential conflict of interest between the FCC and Bear Stearns, a third-party client of Weil Gotshal's. By relying on these false certifications to obtain payment from the FCC, Relator argues, Weil Gotshal violated the False Claims Act.

In addition to denying that its work product was defective and that it violated the Federal Acquisition Regulations, defendant Weil Gotshal contends that plaintiff's first cause of action must be dismissed as untimely. The court agrees.

The FCA's statute of limitations provides:

A civil action under section 3730 may not be brought--
(1)     more than 6 years after the date on which the violation of § 3729 is committed, or
(2)     more than 3 years after the date when the facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b).

Federal courts have not been uniform in their interpretation of this statute. The handful of courts to consider the issue have adopted two, somewhat different, approaches to whether a private relator can take advantage of § 3731(b)'s three-year tolling and ten-year limitations period where, as here, the government does not intervene in the action.

On the one hand, the Ninth Circuit has held that § 3731(b)(2) does, in fact, apply to suits brought solely by a *qui tam* relator, and that the knowledge prong of subsection (b)(2) is not limited to the knowledge of the government, but rather extends to the relator. See United States

9

ex. rel. Hyatt v. Northrop Corp., 91 F.3d 1211 (9th Cir. 1996), vacated on other grounds, 521 U.S. 1101 (1997).

On the other hand, at least two district courts, including the only court in this Circuit to address the issue, have held that subsection (b)(2) only applies to actions in which the government intervenes. See United States ex. rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 6 F.Supp. 2d 263 (S.D.N.Y. 1998); United States ex. rel. El Amin v. George Washington Univ., 26 F.Supp.2d 162 (D.D.C. 1998). The Thistlethwaite Court considered the Ninth Circuit's interpretation of § 3731 and expressly rejected it as inconsistent with the language of the statute. Thistlethwaite, 6 F.Supp.2d at 265 n.1.

This Court agrees that the plain meaning of the statute supports the conclusion that the three-year knowledge requirement contained in subsection (b)(2) only applies to cases in which the government intervenes. That subsection, which creates the three-year tolling provision and the ten-year limitations period, makes no mention of the *qui tam* relator. Rather, it refers only to an "official of the United States." Therefore, because the United States elected not to intervene in the case at bar, Relator cannot avail herself of subsection (b)(2)'s lengthier limitations period. Her claims are governed by a six-year statute of limitations, accruing at the time the alleged violation of the FCA occurred.

Weil Gotshal provided legal services to the FCC from August 16, 1996 to June 13, 1997. Compl. ¶ 99. Its alleged failure to inform the FCC of the existence and applicability of the CRA, and its alleged presentation of false certifications, necessarily occurred during that period. Therefore, Relator's action, which was filed on March 29, 2005– almost eight years after Weil Gotshal's contract with the FCC expired– is untimely as against Weil Gotshal.

B.  Plaintiff's Remaining Causes of Action Fail to State a Claim Under the FCA and Constitute Improper Collateral Attacks

Plaintiff's second through seventh causes of action allege a variety of FCA violations, including submission of false claims for payment from the government, use of false statements to obtain payment of false claims or to avoid payment obligations to the government ("reverse false claims"), and conspiracy to commit both.  Because Relator has failed to state a claim under the FCA, and because her action is barred by the doctrine of res judicata, these claims are dismissed.

1.  *Plaintiff Fails to State a Claim Under the FCA*

(A)  False Statements

Relator's second through seventh causes of action each rest, at least in part, on defendants' alleged use of false statements to obtain payment from the government or to avoid payment obligations to the government.  However, Relator fails to identify a single false statement made by defendants at any time.

Even more troubling, though, is the theory upon which Relator's Complaint rests– namely, that defendants violated the FCA by failing to bring a federal statute to the attention of the federal government in the course of a litigation to which the federal government was a party.  This contention is patently absurd and cannot form the basis of FCA liability.

"It is always appropriate to assume that our elected representatives, like other citizens know the law[.]" Cannon v. Univ. of Chicago, 441 U.S. 677, 696-97 (1979); see also Cantone v. Spielmann, 149 F.3d 156, 161 (2d Cir. 1998).  This presumption of knowledge applies with particular force in the present case where the federal statute at issue directly regulates the government's own conduct, rather than that of private parties.  The Court thus rejects Relator's contention that defendants violated the FCA by not informing the government of the existence of

the CRA, as the federal legislature which enacted the law, the federal agencies which enforce the law, and the federal courts which apply the law are all charged with knowledge of the statute.

Moreover, Relator concedes that the government had *actual* knowledge of the CRA's existence and applicability to NextWave's spectrum auction debt. More than a year before NextWave declared bankruptcy, the CBO released two studies which suggested that the CRA governed the spectrum auction debts. Compl. ¶ 39. Also in 1997, NextWave provided the FCC with a statement referencing the CRA and its application to C Block debts. Compl. ¶ 40. In December 2002 or January 2003– fifteen months before the bankruptcy court approved NextWave's settlement– Relator herself advised FCC attorneys that the CRA might provide a defense to bankruptcy laws in the event that spectrum auction debtors filed for bankruptcy. Compl. ¶ 38. Not only was the government informed about the existence of the CRA and advised on its potential applicability to spectrum auction debts, but defendants were aware that the government had knowledge of the statute. Relator's contention, therefore, that defendants unlawfully omitted to inform the government of the existence of the CRA, is as disingenuous as it is illogical.

Under Relator's theory, every litigant stating a monetary claim against the government would have a duty to inform the government of all statutes and other authorities that could potentially benefit the government– even if they are obvious, and even if the government is aware of them and has chosen not to invoke them– or else face liability under the CRA. This theory, which essentially requires a party to provide its opponent with legal strategies and defenses, is utterly contrary to our basic adversarial system of justice, and wholly inconsistent with the purpose of the FCA, namely to deter fraud and recover treasury funds lost to fraud. See,

e.g., United States ex. rel. DeCarlo v. Kiewit/ AFC Ent., Inc., 937 F.Supp. 1039, 1046 (S.D.N.Y. 1996). It is thus not surprising that Relator has failed to cite, and that this Court is unable to locate, a single case adopting Relator's theory.

Furthermore, Relator would have the court conclude that defendants are liable under the FCA for not informing the government of a potential legal argument– that the CRA precluded NextWave from discharging its debt to the FCC in bankruptcy– even though defendants believed the CRA to be inapplicable to NextWave's request for bankruptcy relief, and even though the government had knowledge of the CRA but chose not to invoke it as a defense. As one court in this Circuit has held, ". . . unresolved disputes about the proper interpretation of a statute or regulation should not lead to suits under the FCA, at least where a claimant's interpretation of the governing law is reasonable." Visiting Nurse Ass'n of Brooklyn v. Thompson, 378 F.Supp.2d 75, 96 (E.D.N.Y. 2004). Because defendants' interpretation of the CRA constituted a legal opinion rather than a statement of fact, any statements or omissions relating to the CRA were not "false" within the meaning of the FCA. See 1 John T. Boese, Civil False Claims and Quit Tam Actions §§ 2.01[B][1] (2d ed. 2005).

The Court declines to construe as "false statements" defendants' failure to inform the federal government, in the course of litigation, of the existence of a federal statute about which the government had both constructive and actual knowledge. Defendants had no obligation to so inform the government, and their failure to bring to the government's attention a statute about which the government was already aware does not make their statements– if any "statements" were made– false. Because Relator has failed to allege any false statements by defendants, counts two through seven are dismissed for failure to state a claim under the FCA.

(B)     False Claims

In addition to Relator's failure to identify a single false statement made by defendants, Relator fails to allege any direct false claim submitted by defendants. Accordingly, counts five and six, which allege that defendants made false claims for payment from the government and conspired to do the same, fail to state a claim under the FCA.

Relator's fifth and sixth causes of action allege violations of § 3729(a)(1), (a)(2), and (a)(3), each of which requires an allegation of a "false or fraudulent claim." The FCA defines a "claim" as "any request or demand, whether under contract or otherwise, for money or property" from the government. 31 U.S.C. § 3729(c). Without a demand for payment or reimbursement *from* the government, there simply is no "claim" under the FCA.

With the exception of allegations related to counts one and seven, in which Relator asserts that defendants made false claims for legal services fees, Relator nowhere alleges that defendants made any false claims for payment *from* the government. Rather, the crux of Relator's case is that defendants relied on false statements to decrease or avoid an obligation to make payments *to* the government for its electromagnetic spectrum licenses. Significantly, in her Opposition to Defendants' Motion to Dismiss, Relator does not refute defendants' contention that she failed to identify a "claim" within the meaning of the FCA. This defect is fatal to Relator's fifth and sixth causes of action.

(C)     Conspiracy to Make "Reverse False Claims"

Relator's third and fourth causes of action allege conspiracies to decrease or avoid NextWave's payment obligations to the government in violation of § 3729(a)(c). These allegations fail to state a claim because "reverse false claims" cannot form the basis of a

14

conspiracy under the FCA.

Section 3729(a)(3) makes it unlawful to "conspire[] to defraud the Government by getting a false or fraudulent claim allowed or paid." In order to state a claim under this subsection, plaintiff must aver that: "(1) the defendant conspired with one or more persons *to get a false or fraudulent claim allowed or paid by the United States* [and] (2) one or more conspirators performed any act to effect the object of the conspiracy." United States ex. rel. Taylor v. Gabelli, 345 F.Supp.2d 313, 331 (S.D.N.Y. 2004) (citations omitted) (emphasis added). While § 3729(a)(7) creates a cause of action for "reverse false claims," or the use of false statements to decrease or avoid payment obligations *to* the government, the language of subsection (a)(3) mirrors that of subsections (a)(1) and (a)(2), and thus is limited in scope to direct false claims, as defined above. See 1 Boese § 2.01[C][4].

While the Second Circuit has yet to consider this issue, the only two federal courts to publish decisions directly addressing it have held that § 3729(a)(3) does not reach "reverse false claims." See United States ex. rel Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc., 370 F.Supp.2d 993, 1003 (N.D.Cal. 2005); United States ex. rel. Atkinson v. Pennsylvania Shipbuilding Co., 255 F.Supp.2d 351, 413-14 (E.D.Pa. 2002). As one court made clear, "Plainly excluded from [the terms of § 3729(a)(3)] is liability for a person who conspires to defraud the United States by concealing his or her own financial obligation to the government." Atkinson, 255 F.Supp.2d at 414.

Accordingly, Relator's third and fourth causes of action fail to state a claim for conspiracy under the FCA.

2. *Plaintiff's Claims Are Barred By Res Judicata*

Relator seeks, via counts two through seven of the Complaint, to invalidate NextWave's global settlement, which she characterizes as a "false claim," and to re-litigate the question of whether NextWave's spectrum auction debt was dischargeable in bankruptcy, or whether discharge was precluded by the CRA. However, because the government could have, but chose not to, raise the CRA as a defense to NextWave's global settlement prior to its approval by the bankruptcy court, the doctrine of res judicata precludes Relator from taking a second bite at the apple by raising the issue in this action. See Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 870 (2d Cir. 1991).

The purpose of res judicata is to, among other things, "relieve parties of the cost and vexation of multiple lawsuits . . . [and] encourag[e] reliance on adjudication." Corbett v. MacDonald Moving Serv., Inc., 124 F.3d 82, 91 (2d Cir. 1997) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). "These finality interests are particularly important in the bankruptcy context." Id. A subsequent action is barred by the doctrine of res judicata where (1) the prior decision was a final judgment on the merits; (2) the litigants were the same parties; (3) the prior court was of competent jurisdiction; and (4) the causes of action were the same. Id. (citations omitted).

Relator does not contest that the bankruptcy court's approval of NextWave's global settlement and the related appellate proceedings constituted final judgments on the merits, that the litigants in the bankruptcy proceedings were the same parties as those in the present action, or that the bankruptcy and appellate courts were courts of competent jurisdiction. Rather, Relator claims that res judicata does not bar her action because the fraud allegations she raises were not litigated in the prior proceedings. The court disagrees.

16

In her Opposition Brief, Relator acknowledges that, "A finding that [the CRA was] violated, as outlined by Relator, would include determinations that the discharge of $6 [billion] was illegal and that the debtors' retention and resale of the licenses was illegal." (Opp. to Def.'s Mot. to Dismiss at 6). This precise issue– the dischargeability of NextWave's debt and NextWave's right to retain its electromagnetic spectrum licenses– has already been decided, not only by the bankruptcy court, but also by the D.C. Circuit and the U.S. Supreme Court. See NextWave, 537 U.S. at 304; In re NextWave Personal Commc'ns, Inc., No. 98 B 21529 (Bankr. S.D.N.Y. May 25, 2004). This Court is not fooled by Relator's veiled attempt to disguise this issue as fraud claim. Relator's *qui tam* action is nothing more than an impermissible collateral attack on settled law.

Nor is Relator's action saved by the fact that the government never raised the CRA as a defense during any of the prior proceedings. "Res judicata dictates that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." In re Jamesway Corp., 205 B.R. 32, 36 (Bankr. S.D.N.Y. 1996).

In this case, "Relator advised FCC attorneys of the appropriations laws that pre-empted the bankruptcy laws, including but not limited to the Federal Credit Reform Act" in late December 2002 or early January 2003– nearly 15 months before the bankruptcy court approved NextWave's global settlement. Compl. ¶ 38. Thus, the government could have raised the CRA as a defense to NextWave's global settlement at any point between January 2003 and May 25, 2004. However, none of the FCC's counsel saw fit at any point during the protracted bankruptcy proceedings to challenge the settlement on that ground. Relator's attempt, more than 10 months

17

proceedings to challenge the settlement on that ground. Relator's attempt, more than 10 months after the settlement was approved, to raise this challenge, in the name of the United States government, is the very sort of untimely and impermissible collateral attack on prior proceedings that the doctrine of res judicata is designed to prevent.

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss the Complaint is granted.

The Clerk of the Court is directed to keep this file open pending the government's consent to dismissal, pursuant to 31 U.S.C. § 3730(b)(1). The government is ordered to provide the court with a determination of whether it so consents by March 6, 2006.

This constitutes the decision and order of the Court.

Dated: February 24, 2006.

_____
U.S.D.J.

BY FAX TO ALL COUNSEL